UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br>     v.<br>MANUEL SALVADOR GIL-SOLANO,<br><br>                      Defendant. | Case No. 3:23-cr-00018-MMD-CLB<br><br>ORDER |

## I. SUMMARY

Manuel Salvador Gil-Solano is being charged under 18 U.S.C. § 922(g)(5)(A) with possessing firearms as an undocumented immigrant. Following full briefing on the matter, the Court denied Gil-Solano's motion to dismiss his indictment, finding that the underlying statute violates neither the Second nor the Fifth Amendment. (ECF No. 39 ("Order").) Before the Court is Gil-Solano's motion for reconsideration of the Order. (ECF No. 40 ("Motion").)[1] Because the Court finds that it did not commit clear error in finding that the government met its evidentiary burden or in analyzing historical analogues, the Court will deny Gil-Solano's Motion.

## II. BACKGROUND

A federal grand jury indicted Gil-Solano on one count of possessing firearms as a prohibited person in violation of 18 U.S.C. § 922(g)(5)(A). (ECF No. 1 ("Indictment").) The Indictment alleges that Gil-Solano knowingly possessed seven firearms shipped and transported in interstate and foreign commerce, despite knowing that he was "an alien illegally and unlawfully in the United States." (*Id.*)

---

[1]The government filed an opposition (ECF No. 41), and Gil-Solano replied (ECF No. 42).

### III. MOTION FOR RECONSIDERATION

When ruling on motions for reconsideration in criminal cases, this Court and other district courts look to the civil standard governing motions for reconsideration. *See, e.g.*, *United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005), *rev'd on other grounds*, 474 F.3d 1150 (9th Cir. 2007); *see also United States v. Turnbow*, No. 3:18-cr-1-MMD-WGC, 2019 WL 1261357, at *1-2 (D. Nev. Mar. 19, 2019). Per this standard, reconsideration is appropriate only if "the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)); *see also* LR 59-1(a). Motions for reconsideration may not raise new arguments which could have been raised earlier in the litigation. *See id.*

No new evidence has been presented, and there has been no intervening change in controlling law. Instead, Gil-Solano reiterates two arguments as to why the Court committed clear error in the Order: (1) the Court misapplied Ninth Circuit precedent in holding that the government had met its burden of producing historical analogues; and (2) oath-based historical firearms prohibitions are not sufficiently analogous to § 922(g)(5)(A) under *Bruen v. New York State Rifle & Pistol Association*. (ECF No. 40 at 1.) *See also* 597 U.S. 1 (2022). While the Court is persuaded by neither, it addresses both below.

#### A. The Government's Evidentiary Burden

Gil-Solano first argues that the Court eliminated the government's duty to collect and present historical analogues. (ECF No. 40 at 5.) The government responds that its citations to caselaw which discussed such analogues were sufficient. (ECF No. 41 at 4.) The Court has already addressed these arguments but will discuss them once more. (ECF No. 39 at 4-5 n.3.)

The Order was not decided in contravention of the Ninth Circuit's recent opinions in *Teter v. Lopez* or *Baird v. Bonta*. (ECF No. 40 at 5-9.) *See also* 76 F.4th 938 (9th Cir.

2023); 81 F.4th 1036 (9th Cir. 2023). *Teter* required only that the government "prove" its statute "is consistent with this Nation's historical tradition of regulating weapons" and "derive" from historical regulations "a proper historical analogue." 76 F.4th at 950-51 (cleaned up). The government "*may* meet its burden by citing analogous regulations that were enacted close in time to the Second Amendment's adoption in 1791 or the Fourteenth Amendment's adoption in 1868." *Id.* (emphasis added). Here, the government has proven that § 922(g)(5)(A) is consistent with the historical American tradition of loyalty oath-based prohibitions on gun ownership. (ECF No. 37 at 6, 8-9.) And the government has derived an analogue from the laws that totally prohibit firearms access for individuals who do not swear an oath of allegiance "because, in the view of the legislature, providing firearms to those who have not demonstrated allegiance to this nation might put weapons in the hands of those who would do the nation harm." (*Id.* at 8.)

*Baird* and *Bruen* likewise require that the government "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Baird*, 81 F.4th at 1043 (quoting *Bruen*, 597 U.S. at 19). *Baird* further demands that the government "locate" and "identify a well-established and representative historical analogue." *Id.* at 1043, 1046 (quotations omitted). While ordinarily a zealous advocate would directly cite a supporting authority, it is reasonable to accept the government's quotations of and citations to other court's discussions of colonial oath-based restrictions on firearms possession. Doing so did not require the Court to "sift the historical materials for evidence"; instead, the Court relied on the parties to frame the issues for discussion and only sifted through directly and indirectly cited federal court opinions. (ECF No. 39 at 6-8.) *See also Bruen*, 597 U.S. at 60; *Baird*, 81 F.4th at 1041. Though Gil-Solano presents a persuasive interpretation of *Teter* and *Baird*'s requirements, the Court is not convinced that its own interpretation was clearly erroneous.

Gil-Solano further references the 227-page addendum that Hawaii filed in *Teter v. Lopez* as evidence that the government failed to meet its evidentiary burden in the instant

case. (ECF No. 40 at 8-9.) Not only does Hawaii's extensive survey of possibly analogous historical laws not render every lesser historical record insufficient, but the Ninth Circuit also held that Hawaii did not meet its burden because the historical laws that the state presented were insufficiently analogous to its ban on knives—not because the evidentiary record was too sparse. *See Teter*, 76 F.4th at 951-52.

Gil-Solano also incorrectly asserts that Footnote 5 of the Order was an unconstitutional advisory opinion. (ECF No. 40 at 8.) *See also* U.S. CONST. art. III. § 2 (limiting the federal judicial power to "cases" and "controversies"). For a case to be justiciable, there must be an actual dispute between adverse litigants and a substantial likelihood that a favorable decision will have some effect, "as distinguished from an [advisory] opinion advising what the law would be upon a hypothetical state of facts." *Calderon v. Ashmus*, 523 U.S. 740, 745-46 (1998) (quoting *Aetna Life Ins. Co. v. Haworth*, 330 U.S. 227, 241 (1937)); *see also Coal. for a Healthy Cal. v. F.C.C.*, 87 F.3d 383, 386 (9th Cir. 1996). In the Order, the Court did not make any determinations of legal rights that did not affect the outcome of the case. Instead, the Court merely proffered "several additional *possibly* analogous statutes" without determining whether they are analogous to § 922(g)(5)(A) under *Bruen* and subsequent Ninth Circuit jurisprudence. (ECF No. 39 at 7 n.5 (emphasis added).) As the existence of other colonial oath-based prohibitions on firearms possession is a fact and not a determination of hypothetical legal rights, Footnote 5 does not contain any advisory opinions.

Accordingly, the Court did not clearly err in finding that the government met its evidentiary burden and denies Gil-Solano's request for reconsideration of this issue.

**B.     Comparability of Historical Laws**

Gil-Solano further argues that Founding-era oath-based prohibitions on firearms possession are not sufficiently analogous to § 922(g)(5)(A). (ECF No. 40 at 9-14.) The Court has already provided an in-depth explanation of the ways in which the statute is relevantly similar to these oath-based prohibitions. (ECF No. 39 at 6-9.) Both impose a comparable burden on the right to bear arms by completely prohibiting firearms

possession, and both are comparably justified by concerns that it may be unsafe to allow those who have not formally sworn allegiance to the country to possess guns. *See Bruen*, 597 U.S. at 29; *United States v. Leveille*, 659 F.Supp.3d 1279, 1283-85 (D.N.M. 2023); *United States v. Escobar-Temal*, No. 22-cr-393, 2023 WL 4112762, at *5-6 (M.D. Tenn. June 21, 2023); *Binderup v. Att'y Gen. U.S. Am.*, 836 F.3d 336, 390-91 (3d Cir. 2016) (en banc) (Fuentes, J. concurring in part).

This comports with *Baird*'s mandate that historical analogues "curtail[] the right to [possess firearms] to a comparable degree, with a comparable severity, and with a comparable blanket enforcement." *Baird*, 81 F.4th at 1047. Gil-Solano contests that 'severity' plainly includes the sanctions imposed upon those who violate gun control measures and thus the historical laws cited in the Order are not comparably severe because they do not threaten violators with imprisonment. (ECF No. 40 at 10.) But severity may reasonably refer to other aspects of the law. *See e.g.*, *Atkinson v. Garland*, 70 F.4th 1018, 1021 (7th Cir. 2023) (noting that some laws discussed in *Bruen* "were comparable to the New York statute in severity but outliers in their time"); *Bruen*, 597 U.S. at 64-64 (finding that, although it was an outlier, a historical Texas law was analogous to the modern New York statute at issue, without discussing the sanctions for violating either law). The Court's focus on *Bruen*'s central inquiries—the burden on the Second Amendment right and its justification—in determining whether oath-based laws are analogous to § 922(g)(5)(A) was not clear error. *See Bruen*, 597 U.S. at 29.

Given the ambiguity of binding authority addressing this unsettled question of law and the near-unanimity of courts holding § 922(g)(5) constitutional under *Bruen*'s historical tradition test, Gil-Solano cannot establish clear error, and thus his Motion is denied. *See, e.g.*, *Leveille*, 659 F.Supp.3d at 1283-85; *United States v. Ruiz*, No. CR 23-0105-WS, 2023 WL 7171451, at *2 (S.D. Ala. Oct. 31, 2023); *United States v. Pineda-Guevara*, __ F.Supp.3d __, No. 5:23-CR-2-DCB-LGI, 2023 WL 4943609, at *6 (S.D. Miss. Aug. 2, 2023); *United States v. Andrade-Hernandez*, No. 3:23-CR-26-DCB-LGI, 2023 WL 4831408, at *6 (S.D. Miss. July 27, 2023); *Escobar-Temal*, 2023 WL 4112762, at *6;

*United States v. Vizcaino-Peguero*, No. CR 22-168 (FAB), 2023 WL 3194522, at *4 (D.P.R. Apr. 28, 2023); *United States v. Carbajal-Flores*, No. 20-CR-00613, 2022 WL 17752395, at *3 (N.D. Ill. Dec. 19, 2022); *United States v. DaSilva*, No. 3:21-CR-267, 2022 WL 17242870, at *12 (M.D. Pa. Nov. 23, 2022); *cf. United States v. Sing-Ledezma*, __ F.Supp.3d __, 2023 WL 8587869, *18 (W.D. Tex. Dec. 11, 2023).

IV.     **MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY**

Gil-Solano urges the Court to consider the Western District of Texas' opinion in *United States v. Sing-Ledezma*, which held § 922(g)(5)(A) unconstitutional under *Bruen*. (ECF No. 43.) *See also* 2023 WL 8587869, at *7-18. The Court agrees that there is good cause for considering *Sing-Ledezma* but ultimately finds the opinion's reasoning unpersuasive. *See Alps Prop. & Cas. Ins. Co. v. Kalicki Collier, LLP*, 526 F. Supp. 3d 805, 812 (D. Nev. 2021) (holding that a court may grant a request to file supplemental briefs for good cause, such as when the supplemental authority is particularly persuasive or helpful).

As far as the Court is aware, *Sing-Ledezma* is the only opinion that has held § 922(g)(5)(A) unconstitutional under *Bruen*'s historical tradition test. *See* 2023 WL 8587869, at *18. The Western District of Texas conducted a thorough examination of historical laws in reaching that conclusion. *See id.* at *7-18. But for the reasons stated in the Order and above, the Court disagrees with the conclusion that loyalty oath-based laws are distinguishable because they "responded to a concrete and particularized threat during a time of war or rebellion." *Id.* at *17. The Western District of Texas reached this holding under Fifth Circuit standards which are not binding on this Court. *See id.* Moreover, *Bruen*'s framework for assessing Second Amendment challenges can be "difficult to apply" due to limited guidance from the Supreme Court as to what constitutes an analogue versus a historical twin. *Id.* at *18. Differences of opinion on the stringency of this standard—especially from courts applying another circuit's precedent—are insufficient to convince the Court that it clearly erred in deriving its own interpretation. In sum, for good cause shown, the Court grants Gil-Solano's motion for leave to file

supplemental authority, but that supplemental authority does not sway the ultimate conclusion that the Court did not clearly err in the Order.

## V.     CONCLUSION

The Court notes that the parties made arguments and cited cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Defendant's motion for reconsideration (ECF No. 40) is denied.

It is further ordered that Defendant's motion for leave to file supplemental authority (ECF No. 43) is granted.

DATED this 22nd day of December 2023.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE