UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MANUEL SALVADOR GIL-SOLANO,<br><br>Defendant. | Case No. 3:23-CR-00018-MMD-CLB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO QUASH WRIT OF HABEAS CORPUS AD PROSEQUENDUM AND MOTION TO ENFORCE RELEASE ORDER**<br><br>[ECF Nos. 46, 55] |

Currently pending before the Court are two motions filed by Defendant Manuel Salvador Gil-Solano ("Gil-Solano"). First, on January 10, 2024, Gil-Solano filed a motion to quash the writ of habeas corpus ad prosequendum, (ECF Nos. 30, 31). (ECF No. 46.) The government filed a response in opposition, (ECF No. 49), and Gil-Solano replied. (ECF No. 50). Second, on February 20, 2024, Gil-Solano filed a motion to enforce the Court's release order, (ECF Nos. 5, 13). (ECF No. 55). The government opposed, (ECF No. 58), and Gil-Solano replied. (ECF No. 59.) For the reasons stated below, the Court grants Gil-Solano's motion to quash the writ of habeas corpus ad prosequendum, (ECF No. 46), and motion to enforce the release order, (ECF No. 55).

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On May 15, 2023, Gil-Solano appeared before the undersigned Magistrate Judge for his initial appearance, arraignment and plea, and detention hearing. (ECF No. 5.) At the detention hearing, Pretrial Services recommended Gil-Solano's release on a Personal Recognizance Bond ("PR Bond") pending trial with conditions of release. The Government <u>agreed</u> with Pretrial Services' recommendation but suggested one additional condition be added to the PR Bond. (*Id.*) Defense counsel did not oppose the added condition. (*Id.*) Ultimately, the Court agreed with Pretrial Services, defense counsel, <u>and the Government</u> that Gil-Solano should be released pending trial. (*Id.*) Thus, the Court ordered Gil-Solano's release on the PR Bond with the conditions set by the Court. (*Id.*;

ECF No. 13.)

Shortly after the Court released Gil-Solano on the PR Bond, U.S. Immigration and Customs Enforcement ("ICE") took Gil-Solano into immigration custody pursuant to an immigration detainer. (*See* ECF No. 27 at 2.) ICE instituted removal proceedings against Gil-Solano to remove him from the United States despite the ongoing criminal proceedings. Ultimately, on August 25, 2023, an immigration judge entered an order of removal for Gil-Solano. *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation, (last visited February 20, 2024) (search by Gil-Solano, A-Number 220-986-732).[1]

### A.   Petition for a Writ of Habeas Corpus ad Prosequendum

On July 12, 2023, prior to the entry of the order of removal, Gil-Solano filed a motion to dismiss the indictment. (ECF No. 21). In the motion, Gil-Solano argued the charge filed against him was unconstitutional in violation of the Second Amendment. (*Id.*) The Government opposed the motion. (ECF No. 25.) Gil-Solano filed his reply brief on August 25, 2023 – the same day the immigration judge entered the removal order. (ECF No. 26; *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation, (last visited February 20, 2024) (search by Gil-Solano, A-Number 220-986-732).)

Shortly thereafter, on August 30, 2023, Gil-Solano filed a petition for a writ of habeas corpus ad prosequendum seeking to transfer Gil-Solano from immigration custody to the custody of the U.S. Marshal's Service ("USMS"). (ECF No. 27.) In the petition, Gil-Solano explained the events that led to his detention by ICE following his

---

[1] The Court takes judicial notice of the automated case information on the EOIR website related to Gil-Solano's immigration case. A court may take judicial notice of a fact that is generally known, and which is not subject to dispute, and deemed authentic. Fed. R. Evid. 201; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). This includes information contained on government run websites that provide information related to offenders, their status or other case related information. *See U.S. v. Basher*, 629 F.3d 1161, 1165 (9th Cir. 2011) (taking judicial notice of public information on the Bureau of Prisons inmate locator website); *Foley v. Martz*, No. 3:18-cv-02001-CAB-AGS, 2018 WL 5111998, at *1 n.1. (S.D. Cal. Oct. 19, 2018) (taking judicial notice of information on California Dept. of Corrections and Rehabilitation inmate locator website).

release on the PR Bond. (*Id.*) Gil-Solano requested that the Court issue a writ of habeas corpus ad prosequendum to remove him from ICE custody and transfer him to U.S. Marshals custody to allow Gil-Solano to "litigate the federal criminal charge against him on the merits." (ECF No. 27 at 5). Gil-Solano argued that it appeared immigration authorities were "moving to block [him] from litigating the merits of this case" and that issuance of the writ was "necessary to bring him into court . . . for trial." (*Id*. at 3 (citing to 28 U.S.C. § 2241(a), (c)(5).) Moreover, Gil-Solano asserted that issuance of the writ would "stop the removal proceedings from jeopardizing this Court's ability to try him." (*Id.*) At different points in the petition, Gil-Solano argues the writ should remain in place "*at least until*" the Court resolves the pending motion to dismiss, or the constitutionality of the instant prosecution. (See ECF No. 27 at 1, ln. 22; 3, ln. 11; 6, ln. 1 (emphasis added).) Critically, nowhere in the petition does Gil-Solano specify that the writ was sought for the *sole* purpose of resolving the motion to dismiss. (*Id.*)

After the Court ordered the government to respond to Gil-Solano's petition, (ECF No. 28), the government filed its non-opposition. (ECF No. 29.)

On September 6, 2023, the Court granted Gil-Solano's petition and ordered the issuance of writ of habeas corpus ad prosequendum. (ECF Nos. 30, 31.) The Court issued the proposed order and writ, which were both provided by Gil-Solano. (*Compare* ECF No. 27-1, *and* ECF No. 27-2, *with* ECF No. 30, *and* ECF No. 31.) The order explained that the writ of habeas corpus ad prosequendum directed the production of Gil-Solano to appear "for further proceedings" and was effective "until excused by the said Court." (ECF No. 30.) The order is not limited to only those further proceedings relating to the motion to dismiss, ECF No. 21. (*Id.*) Moreover, the writ also does not include any language limiting its effect based on the then-pending motion to dismiss. (ECF No. 31.) Rather, the writ commanded that Gil-Solano appear before the Unites States District Court in Reno, Nevada "immediately, and from time to time and day to day thereafter, at such times and places as may be ordered and directed by the Court, until [Gil-Solano] is released and discharged by the said Court." (*Id.*)

On October 16, 2023, Gil-Solano's motion to dismiss was denied. (ECF No. 39.) Gil-Solano subsequently filed a motion for reconsideration of the denial of the motion to dismiss, (ECF No. 40), which was also denied. (ECF No. 45.)

### B. Motion to Quash the Writ

On January 10, 2024, Gil-Solano filed a motion to quash the writ of habeas corpus ad prosequendum. (ECF No. 46.) Gil-Solano argues the purpose of the writ of habeas corpus ad prosequendum has been satisfied based on the Court's denial of his motion to dismiss and thus there is no longer any need to keep him in USMS custody. (*Id.*)

The government opposed Gil-Solano's motion, arguing that the purpose of the writ of habeas corpus ad prosequendum was not satisfied by the resolution of the motion to dismiss because a "non-dispositive pre-trial ruling does not complete the federal prosecution." (ECF No. 49 at 3.) The government points out that Gil-Solano's petition for the writ requested that the writ be issued "*at least* until the constitutionality of the instant prosecution can be resolved," not *only* until the constitutionality was resolved in the motion to dismiss. (*Id.* at n.4. (emphasis added).)

Gil-Solano replied, arguing again that the writ was only intended for the specific purpose of litigating his then-pending motion to dismiss. (ECF No. 50.) Gil-Solano also argues that should he be needed for future proceedings in federal court, a new writ of habeas corpus ad prosequendum could be issued to ensure his presence. (*Id.* at 3.)

On February 16, 2024, the Court held a hearing regarding Gil-Solano's motion to quash the writ of habeas corpus ad prosequendum. (ECF No. 54.) The Court heard further arguments from each side regarding the motion to quash.  (*Id.*) At the hearing, the government indicated that the U.S. Attorney's Office (USAO) did not have the ability to communicate with ICE. (*Id.*)  The Court raised concerns that ICE's detention of Gil-Solano after he was ordered released by the Court was troubling as it appeared to violate the Court's release order. (*Id.*) However, as that issue was not raised by Gil-Solano, the Court clarified it would not reach that issue and was limited to deciding only those issues directly presented by the motion to quash. (*Id.*) As Gil-Solano did not raise the issues related to

enforcement of the release order, the Court then determined the factual circumstances which prompted the Court to enter the writ of habeas corpus ad prosequendum had not changed but for the resolution of Gil-Solano's motion to dismiss. (*Id.*) As the resolution of the motion to dismiss did not frustrate the purpose of the writ, the Court initially denied the motion to quash the writ. (*Id.*)

Subsequently, Gil-Solano filed a motion to enforce the Court's release order, (ECF Nos. 5, 13), which is addressed in detail below. (ECF No. 55.) In reviewing the motion to enforce the release order, it appeared the issues raised by the motion overlap with the prior motion to quash the writ of habeas corpus ad prosequendum. Accordingly, the Court withdrew its denial of the motion to quash the writ of habeas corpus ad prosequendum, (ECF No. 54), to evaluate both motions once the latter motion is fully briefed. (ECF No. 56.)

C. **Motion to Enforce Release Order**

Turning to the aforementioned motion to enforce the Court's release order, (ECF Nos. 5, 13), Gil-Solano seeks the Court order him released from USMS custody. (ECF No. 55.) Gil-Solano argues this motion is distinct from the previous motion to quash the writ of habeas corpus ad prosequendum because it concerns "simple enforcement of this Court's already-entered release order" and argues the presence of the writ does not foreclose release. (*Id.* at 1, n.1.) Gil-Solano points out that the government consented to his release, did not appeal the release order, or try to reopen detention at any point. (*Id.* at 2 (citing ECF No. 5).) Gil-Solano argues the Court need only direct him to be released from USMS custody without having to order ICE to release him. (*Id.* at 2-3.)

On March 5, 2024, the government responded. (ECF No. 58.) The government argues that this motion "seems to be another" attempt to quash the writ of habeas corpus ad prosequendum. (*Id.* at 2.) Essentially, the government argues that Gil-Solano is still in custody because of his own request and repeats arguments made in its response to Gil-Solano's motion to quash the writ of habeas corpus ad prosequendum, (ECF No. 49). (*Id.*) The government argues it is incorrect to state that the executive branch has been

1   violating the release order because he was detained pursuant to a separate authority. (*Id.*
2   at 3.) The government also argues there is no release order to enforce at this point
3   because Gil-Solano was released by the Court, even though ICE later detained him for
4   removal proceedings. (*Id.* at 3-4.)

5         Gil-Solano replied on March 12, 2024. (ECF No. 59). Gil-Solano argues that the
6   government did not provide any authority opposing his argument that the writ of habeas
7   corpus ad prosequendum "gives way to [the] release order." (*Id.*)

8   **II.**    **DISCUSSION**

9         The issues presented in the current motions appear to be the result of a total lack
10  of cooperation between two agencies within the Executive Branch of the United States
11  government regarding Gil-Solano's ongoing custodial status pending his federal criminal
12  prosecution. Contrary to the government's claims, the issues the Court must now navigate
13  were created by the government – not Gil-Solano. This is underscored by the fact that the
14  decision to institute removal proceedings is <u>discretionary</u> by the government. *Arizona v.*
15  *United States*, 567 US 387, 396 (2012).

16        Several courts have expressed similar concerns about the Executive Branch's
17  inability to cooperate when a criminal defendant is facing deportation. *United States v.*
18  *Boutin*, 269 F.Supp.3d 24, 28 (E.D.N.Y. 2017) ("Both [DHS] and the [DOJ] are part of the
19  same Executive Branch of the federal government. The instant case ... reflects a failure
20  of coordination between the two agencies that jeopardizes the ability of DOJ to protect
21  the interests of the government and of the people of the United States in prosecuting
22  federal crimes."); *United States v. Brown*, Case No. 4-15-cr-102, 2017 WL 3310689, at
23  *6 (D.N.D. July 31, 2017) ("[D]oes the Government really expect this court to believe that
24  ... [DHS] would simply thumb its nose at Justice and remove the defendant?"); *United*
25  *States v. Barrera-Omana, 638 F. Supp. 2d. 1108, 1111-12 (D. Minn. 2009))* ("The problem
26  here is not that defendant will absent himself from the jurisdiction, but that two Article II
27  agencies will not coordinate their respective efforts. . . . This Court ought not run
28  interference for the prosecuting arm of the government."); *United States v. Marinez-*

*Patino*, No. 1 CR 064, 2011 WL 902466, at *8 (N.D. Ill. Mar. 14, 2011) ("We reject the proposition that if the defendant were released on bond, ICE would act in a way that can only be described as irrational. We likewise reject the government's argument that Congress has statutorily mandated such an irrational result.") It appears the same lack of cooperation and communication led to the issues presented by the pending motions.

The Court now turns to the motions. Although the motion to quash the writ of habeas corpus ad prosequendum was filed first, it is clear resolution of that motion depends on the disposition of the subsequent motion to enforce the release order. At the hearing for the motion to quash the writ of habeas corpus ad prosequendum, the Court expressed its frustration that ICE's detention of Gil-Solano after he was ordered released by the Court appeared to violate the Court's release order but explicitly did not reach any issues related to that potential violation because it was not then before the Court. (ECF No. 54.) Now, however, the issue of enforcing the release order is squarely before the Court. (ECF No. 55.)

While the Ninth Circuit has not ruled on this issue, the Fifth Circuit upheld a district court's decision to release a defendant pursuant to the Magistrate Judge's decision under the BRA even though the defendant was then subject to a writ of habeas corpus ad prosequendum. *United States v. Baltazar-Sebastian*, 990 F.3d. 939, 944 (5th Cir. 2021); *see also United States v. Villatoro-Ventura*, 330 F.Supp.3d 1118 (N.D. Iowa 2018). Additionally, the order issuing the writ of habeas corpus ad prosequendum directs the production of Gil-Solano "to appear before the United States District Court in Reno, Nevada immediately for further proceedings and from time to time and day to day thereafter *until excused by the said Court*." (ECF No. 30 (emphasis added).) This language does not limit the Court's ability to quash the writ, but rather implies that the Court has discretion in determining whether to do so. As the Court may exercise its discretion to quash the writ of habeas corpus ad prosequendum, the Court will first discuss the motion to enforce the release order. *Id.*

///

### A.    Statutory Scheme

Evaluation of the motion to enforce the release order in this case necessitates a discussion of the interaction between the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3150, 3156 ("BRA") and Immigration and Nationality Act of 1965, 8 U.S.C. §§ 1101-1537 ("INA").

#### 1.    The Bail Reform Act

The BRA was enacted in "response to numerous perceived deficiencies in the federal bail process" and "provid[ed] for sweeping changes in both the way federal courts consider bail applications and the circumstances under which bail is granted. . . to give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released.' " *United States v. Salerno*, 481 U.S. 739, 742 (1987) (citing S. Rep. No. 98-225, at 3; U.S. Code Cong. & Admin. News 1984, p. 3185). Although "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception[,]. . . the provisions for pretrial detention in the [BRA] fall within that [] exception." *Id.* at 756.

Under the BRA, pretrial detention is permitted only if a judicial officer determines the government has demonstrated that there is no condition of release, or combination of conditions, which would reasonably assure the appearance of the defendant and the safety of the community. *See* 18 U.S.C. § 3142(e)(1). The BRA directs a district court to assess a variety of factors in determining whether there are conditions which would reasonably assure the defendant's presence. *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019). "[T]he 'individualized evaluation' required by the [BRA] does not include consideration of an immigration detainer or the possibility that the defendant, if released from criminal custody, would be held in immigration custody." *Id.* at 1199. The BRA applies to all persons charged with a federal crime, regardless of immigration status. *Villatoro-Ventura*, 330 F.Supp.3d at 1124; *see also Diaz-Hernandez*, 943 F.3d at 1198 ("Notably, 'immigration status is not a listed factor," and while '[a]lienage may be taken into account, [ ] it is not dispositive.' ")

### 2. The Immigration and Nationality Act

The INA governs the removal of aliens living unlawfully in the United States.[2] *See Johnson v. Guzman Chavez*, 549 U.S. 523, 571 (2021). The INA allows the Department of Homeland Security ("DHS") to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." *Id.* at 527 (citing 8 U.S.C. § 1226(a)). Once an alien is ordered removed by an immigration judge, DHS must physically remove him from the United States within a 90-day "removal period." *Id.* (citing 8 U. S. C. § 1231(a)(1)(A)). ICE has the discretion to stay removal if it decides that "the alien is needed to testify in the prosecution of a person for a violation of a law of the United States or of any State." 8 U.S.C. § 1231(c)(2)(A). "During the removal period, detention is mandatory." *Id.* (citing 8 U.S.C. § 1231(a)(2)); *see also Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) (citing 8 U.S.C. § 1231(a)(2)) ("After entry of a final removal order and during the 90-day removal period, ... aliens must be held in custody.").

The INA also provides for cooperation between DHS and ICE and the U.S. Attorney's Office ("USAO"). Section 215.2(a) provides that "[n]o alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States under the provisions of Section 215.3."[3] As a party to a pending criminal case, an alien's departure is deemed prejudicial. 8 C.F.R. § 215.3(g). Therefore, if an alien who is a party to a pending criminal case tried to depart from the country voluntarily, the INA requires DHS or ICE communicate with the USAO before that alien can be allowed to depart the country.

///

---

[2] The term "alien" is defined as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

[3] Every circuit which has considered the issue agrees the regulations concern an alien's own actions, not those of ICE. *See Barrera-Landa*, 964 F.3d at 923; *Lett*, 944 F.3d at 472–73; *Pacheco-Poo*, 952 F.3d at 953; *cf. Lopez-Angel v. Barr*, 952 F.3d 1045, 1050 (9th Cir. 2019) (Lee, J., concurring) ("The ordinary meaning of the word 'departure' refers to a volitional act. It would be quite strange to say, for example, 'the suspect departed the crime scene when police took him into custody.' ").

### 3. Interaction Between INA and BRA

The conflict and interplay between the INA and BRA has been directly addressed by seven appellate circuits, which all held that the statutes do not conflict such that pretrial release under the BRA precludes pre-removal detention under the INA. *See Baltazar-Sebastian*, 990 F.3d. at 939; *United States v. Barrera-Landa*, 964 F.3d 912 (10th Cir. 2020); *United States v. Pacheco-Poo*, 952 F.3d 950 (8th Cir. 2020); *United States v. Lett*, 944 F.3d 467 (2nd Cir. 2019); *United States v. Soriano Nunez*, 928 F.3d 240 (3rd Cir. 2019); *United States v. Vasquez-Benitez*, 919 F.3d 546 (D.C. Cir. 2019); *United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018). These courts found that, fundamentally, the BRA and INA concern separate grants of Executive authority and govern independent criminal and civil proceedings. *See, e.g.*, *Soriano Nunez*, 928 F.3d at 245 ("[W]hile the BRA aims to ensure a defendant's presence at trial, the INA uses detention to ensure an alien's presence at removal proceedings".); *Barrera-Landa*, 964 F.3d at 918 ("[T]he BRA does not give the district court authority to interrupt ICE's independent statutory obligations to take custody of [an alien-defendant] once he is released."); *Vasquez-Benitez*, 919 F.3d at 553 ("ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial.").

Although the Ninth Circuit has not specifically addressed this issue, it indicated support for the other circuit's decisions when concluding that "detention of a 'criminal defendant pending trial pursuant to the [Bail Reform Act] and detention of a removable alien pursuant to the [Immigration and Nationality Act] are separate functions that serve separate purposes and are performed by different authorities.' " *Diaz-Hernandez*, 943 F.3d at 1199 (quoting *Vasquez-Benitez*, 919 F.3d at 552). After considering the various circuit opinions and the Ninth Circuit's decision in *Diaz-Hernandez*, a court in the District of Arizona concluded that "[t]he BRA does not give this Court authority to prevent ICE from performing its independent statutory obligations while the defendant's present criminal case is pending." *United States v. Sedeno-Badia*, No. CR2102520TUCRMEJM,

1  2022 WL 837499, at *4 (D. Ariz. Jan. 28, 2022), *report and recommendation adopted*, No.
2  CR2102520001TUCRMEJM, 2022 WL 836855 (D. Ariz. Mar. 21, 2022).

3  However, the above cases are not directly analogous to the instant situation
4  because they only involve *pre-removal* detention and not detention after a removal order
5  has been entered. *United States v. Castro-Guzman*, No. CR-19-2992-TUC-CKJ-LCK,
6  2020 WL 3130395, at *3 (D. Ariz. May 11, 2020), *report and recommendation adopted*,
7  No. CR192992TUCCKJLCK, 2020 WL 3130397 (D. Ariz. June 1, 2020) (citing *United
8  States v. Lutz*, No. CR 19-0692-TUC-RM, 2019 WL 5892827, at *4 (D. Ariz. Nov. 12,
9  2019)). A case that is directly on point in this situation is *United States v. Villatoro-Ventura*,
10  330 F.Supp.3d 1118 (N.D. Iowa 2018).

11  In *Villatoro-Ventura*, the defendant was released from USMS custody under the
12  BRA but was then taken into ICE custody and was scheduled for removal. *Id.* The court
13  found that the BRA constituted an independent statutory scheme which did not prohibit a
14  defendant who was granted pretrial release from being detained pursuant to the INA. *Id.*
15  at 1140-41. The court ultimately found there was no evidence that "the Government
16  attempted to evade [the magistrate judge's] release order under the BRA by using ICE
17  detention as a proxy for pretrial detention." *Id.* at 1141-42 (facts of the case showed "ICE
18  detained Villatoro-Ventura for the purpose of removing him from the country – regardless
19  of the impact such removal would have on this case – and would have done so had [the
20  court] not issued a writ of habeas corpus ad prosequendum."). The court therefore
21  concluded that ICE's actions did not violate Villatoro-Ventura's rights under the BRA,
22  although the court cautioned that a violation would occur if the Government did attempt
23  to evade a release order under the BRA by using ICE detention. *Id.* at 1142. The court
24  then quashed the writ of habeas corpus ad prosequendum and ordered Villatoro-Ventura
25  released from USMS custody based on the conditions set under the BRA. *Id.* at 1143.
26  ///
27  ///
28  ///

### B. Application of Statutory Scheme to the Instant Case

Turning to the instant case, the Court finds that this situation merits the same result reached in *Villatoro-Ventura*. Here, like *Villatoro-Ventura*, the facts show that ICE detained Gil-Solano for the purpose of removing him from the country and would have done so had the court not issued a writ of habeas corpus ad prosequendum. Although Gil-Solano argued that it appeared immigration authorities were "moving to block [him] from litigating the merits of this case," allegations of impropriety are insufficient to substantiate a finding that the government used ICE detention as a proxy for pretrial detention. (ECF No. 27 at 3.) Therefore, the Court finds that ICE's actions did not violate Gil-Solano's rights under the BRA. *Id.* at 1142.

As to the effect of the writ of habeas corpus ad prosequendum, Gil-Solano argues that the BRA imposes no writ-related limits on a Court's release powers. (ECF No. 55 at 4 (citing 18 U.S.C. § 3142).) Although the Ninth Circuit has not ruled on this issue, as noted above, the Fifth Circuit upheld a district court's decision to release a defendant pursuant to the Magistrate Judge's decision under the BRA even though the defendant was then subject to a writ of habeas corpus ad prosequendum. *Baltazar-Sebastian*, 990 F.3d at 944. Additionally, as explained previously, the language of the writ itself does not limit the Court's discretion to excuse the writ. (ECF No. 30.)

The government's argument in favor of keeping the writ in place is essentially that because Gil-Solano himself requested the writ, it should not be quashed. (ECF Nos. 49, 58.) This is insufficient grounds to keep Gil-Solano in the Marshal's custody pending trial especially considering the government's failure to oppose detention during the initial detention hearing. (ECF No. 5.) Under the BRA, Congress has determined that any person charged with an offense under the federal criminal laws shall be released pending trial, subject to appropriate conditions, unless a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). The government offers no argument related to the Court's determination under

the BRA that there is a combination of conditions which will reasonably assure the appearance of Gil-Solano and the safety of any other person and the community. (*See* ECF No. 58.) Critically, an individual's immigration detainer cannot be considered in assessing whether pre-trial detention is appropriate under the BRA. *Diaz-Hernandez*, 943 F.3d at 1198.

The government also argues there is no release order to enforce at this point as Gil-Solano was already released by the Court. (ECF No. 58 at 3-4.) This argument illogically assumes the Court's release order is a one-time order, instead of a standing order establishing that Gil-Solano *be released* pending trial. (ECF No. 5.) The order does not lose force once Gil-Solano is released on that day, rather, the use of "be released" implies a continuing status of release from custody. The Court has never withdrawn or modified its release order – nor has it been asked to by either party. Most troubling, the Government's argument seems to imply that the Court cannot enforce its own orders, which the Court expressly rejects. Therefore, the government's contention that the order of release is no longer effective is incorrect.

Additionally, at the hearing regarding the motion to quash the writ of habeas corpus ad prosequendum, the Court made clear it was denying the motion to quash the writ of habeas corpus ad prosequendum because that was the only issue then pending. In making the decision to quash the writ at the hearing the Court could only take consideration of the language of the petition, language of the writ, and the stated purpose for the writ. (ECF No. 54.)  Now, with the motion to enforce the release order pending, the Court is not restricted to considering only the aforementioned items.

Thus, as there are no grounds upon which to reconsider the decision to release Gil-Solano under the BRA, the order that Gil-Solano be released from USMS custody pending trial should be enforced. As the government does not provide any substantive argument why the writ of habeas corpus ad prosequendum should remain in place, the Court will exercise its power to quash the writ and release Gil-Solano from USMS custody pending trial. *Baltazar-Sebastian*, 990 F.3d at 944.

Therefore, for all of these reasons, the Court grants Gil-Solano's motion to quash the writ of habeas corpus ad prosequendum, (ECF No. 46), and motion to enforce the release order, (ECF No. 55).[4]

### III.    CONCLUSION

**IT IS THEREFORE ORDERED** that Gil-Solano's motion to quash the writ of habeas corpus ad prosequendum, (ECF No. 46), is **GRANTED**.

**IT IS FURTHER ORDERED** that Gil-Solano's motion to enforce the release order, (ECF No. 55), is **GRANTED**.

**IT IS FURTHER ORDERED** that Gil-Solano be **RELEASED** from the custody of the United States Marshal, subject to the same conditions set forth in his personal recognizance bond, (ECF No. 13.)

**IT IS SO ORDERED.**

**DATED**: March 29, 2024.

**UNITED STATES MAGISTRATE JUDGE**

---

[4]    To be clear, this order only releases Gil-Solano from USMS custody. This order <u>does not</u> limit ICE's authority to take any actions pursuant to the INA or otherwise enforce any ICE detainer or order of removal that may be in place.